UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CYNTHIA ANN THOMAS, | ) | Civil Action No.: 4:19-cv-02877-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income(SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I.  RELEVANT BACKGROUND

**A.    Procedural History**

Plaintiff filed an application for DIB and SSI on June 2, 2010, alleging inability to work since August 1, 2008. Plaintiff's claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on March 14, 2012, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on April 26, 2012, finding Plaintiff was not disabled within the meaning of the Act. Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council granted in July 2013. Another hearing was held in May 2014. The Administrative Law Judge (ALJ) issued another

unfavorable decision on July 28, 2014, finding Plaintiff was not disabled within the meaning of the Act. (Tr. 13). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in December 2015. Plaintiff filed an action in this court.  In December 2016, this court remanded based on Listing 1.04 because unresolved conflicting evidence existed and the Commissioner was ordered to address Plaintiff's other allegations of error. (Tr. 809). A third hearing was held August 22, 2017.  The Administrative Law Judge (ALJ) issued another unfavorable decision on December 19, 2017, finding Plaintiff was not disabled within the meaning of the Act. (Tr. 709). The Appeals Council declined to assume jurisdiction and Plaintiff requested from the Appeals Council additional time to file a civil action. (Tr. 718). Plaintiff filed this action on October 10, 2019. (ECF No. 1).

**B.     Plaintiff's Background and Medical History**

**1.     Introductory Facts**

Plaintiff was born on May 15, 1968, and was forty years old at the time of the alleged onset. (Tr. 707).  Plaintiff had a limited education and has past relevant work experience as a child monitor. (Tr. 707).  Plaintiff alleges disability originally due to degenerative disc disease and anxiety. (Tr. 99

**2.     The ALJ's Decision**

In the decision of December 19, 2017, the ALJ made the following findings of fact and conclusions of law (Tr. 697-709):

1.     The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2.     The claimant has not engaged in substantial gainful activity since August 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, depression, a panic disorder, and opioid dependence (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with: no climbing ladders/ropes/scaffolds; occasional climbing ramps, stairs, stooping, crouching, and crawling; frequent reaching in all directions with the upper extremities; and, no exposure to unprotected heights, vibration, or extreme cold. She would be further limited to no more than brief public contact with occasional decision making and changes in the work setting.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on May 15, 1968 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2008, through the date of this decision (20 CPR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in the subjective symptom evaluation and that Plaintiff's ability to engage in limited activities at one's own pace is not equivalent to sustaining a workweek. Plaintiff argues the ALJ erred in determining the RFC. Specifically, Plaintiff argues the ALJ failed to explain the finding that Plaintiff had only *mild* difficulties in concentration, persistence, and pace. Secondly as to the RFC, Plaintiff argues the ALJ fails to explain how Plaintiff can perform light work where Plaintiff only missed meeting a Listing by one of the six elements of Listing 1.04. Plaintiff argues the ALJ erred in weighing the opinions of Dr. Bettman and Dr. Muntean, using the same evidence addressed in the Listing 1.04 analysis by the ALJ and the ALJ's prior finding of moderate difficulties in social functioning. Plaintiff argues the ALJ erred in weighing Dr. Jackson's opinion by failing to consider Dr. Jackson's own objective findings. Plaintiff argues the ALJ erred in the weight given to Dr. Neboschick's opinion that Plaintiff was limited to slow paced situations and that she should be restricted from exposure to hazards.

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.     LEGAL FRAMEWORK

#### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

4

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d

6

846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## B.     ANALYSIS

### Subjective Symptom Evaluation

Plaintiff argues the ALJ erred in the subjective symptom evaluation and that Plaintiff's ability to engage in limited activities at one's own pace is not equivalent to sustaining a workweek. Within this issue, Plaintiff also contests that abnormal findings support Plaintiff's allegations and that the ALJ erred in a determination about the availability of insurance.

SSR 16-3p is applicable to cases decided after its effective date, such as this case.  *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR 96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps.  First, there must be documentation by objective medical evidence of the

presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged.  Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: <u>consideration of the entire record, including objective and subjective evidence</u>, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work.  *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence.  *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision.  *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce his capacity to perform work related activities.  SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c).  An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

The ALJ stated he considered all of the documents listed as exhibits in the record including those related to the Order of Remand and related to prior hearings. The ALJ stated he reviewed the prior testimonies and arguments presented. (Tr. 702). After such review of the evidence, the ALJ stated he found the evidence summaries in the prior vacated decisions to be full and fair statements of the underlying records and included such summaries by adoption by reference without repeating such in his decision.[3] (Tr. 702).

The ALJ considered Plaintiff's allegations in the recent hearings expressly:

For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities. Since the last hearing, she has had emergency room visits and one (1) pain management visit.

At the hearing, the claimant testified that since the last hearing, her cervical condition

---

[3] Generally, this court should not dredge prior vacated ALJ decisions or other documents to attempt to determine what an ALJ intended as facts or findings. It is the ALJ's responsibility to set forth the facts upon which he bases his findings.

has worsened. She has limited range of motion of the neck. This condition was discovered in the emergency room. She was referred to an orthopedist. She needs an MRI and a nerve conduction study. The claimant lives with her husband and mother-in-law. Her children are grown. She has not worked since 2007 when she had an accident. She has had low back pain which radiates into her legs since 2008. She also has numbness in her legs which has caused her to fall. In 2015, she fell due to numbness in her right leg. Her pain radiates into her legs. She has also developed pain in her cervical spine. She uses ice and heat for her neck pain. She has difficulty turning her neck and holding her arm up. She can sit for 10-15 minutes before needing to change positions. She has slept in a recliner since 2008. She can walk in her house. She does not walk to the mailbox or take leisurely walks. If she walks too long, she experiences pain and weakness. She can stand for 10-15 minutes at a time. She does not grocery shop. She had a panic attack the last time she went to Wal-Mart. She requires help getting in and out of the bathtub. She can lift a gallon a couple of times. She has not tried to carry a gallon. She does not bend to put on her shoes. Her husband lifts her from the toilet. Her medications do not help like they used to. She is prescribed a fentanyl patch, oxycodone, Lyrica, Flexeril, Prozac, and Xanax. She is unable to function when taking her anxiety medications. She stopped taking Xanax and the pain patch. When she was dependent on her medications, she was a zombie and spent 3 years in bed. She has difficulty handling stress. She does not get out of bed for days due to depression. She has lost 30 pounds in the last three months. She does not get dressed every day. She has a good day once a month. She has panic attacks 2-3 times a month which last 10-15 minutes at a time. She watches television in her bed during the day. She stays in her room. She does not have any hobbies. Her medications make her pain tolerable. She stopped using the pain patch after her brother overdosed. She changed medical providers from Healthcare Partners to Dr. Congdon three years ago. She was referred for a discogram, but did not follow through because she had no insurance and could not afford the visit. She did not follow through with her mental health referral because she did not have insurance.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are not completely consistent with the objective evidence of record.

(Tr. 703). Plaintiff cites to objective evidence of abnormal findings as to Plaintiff's degenerative

disc disease. The record contains contradictory normal exam findings as well. It is the ALJ's job to weigh such conflicting evidence and make a determination. The ALJ noted Plaintiff's treatment history for degenerative disc disease. (Tr. 703-704). The ALJ noted Plaintiff had not required surgery or inpatient hospitalization for the impairment. (Tr. 703). The ALJ noted treatment notes of achieving adequate pain control and other notes of focus on medications without significant complaints or abnormalities noted on exam. (Tr. 704). The ALJ considered that "treatment notes reported on multiple occasions that the claimant's condition was stable with her pain under control, and that she was able to function socially (Exhibits 28F and 29F)." (Tr. 704). Even with emergency room visits, any complications related to back complaints were not noted, such that there was no notation of any MRI or neurosurgical consultation required. (Tr. 704). The ALJ continued to consider the entirety of the record as is appropriate per regulations at the second step of the subjective symptom evaluation:

> The doctors' own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were disabled. In May 2009, a lumbar MRI revealed bulging discs with nerve root impingement at L5-S1 (Exhibit 2F). In May 2009, Dr. Kenneth Wenz noted paraspinal tenderness on exam. There was pain with flexion and extension of the lumbar spine. Motor strength was good (Exhibit 3F). A cervical MRI in June 2009 revealed mild degenerative disc disease with foraminal stenosis, but no central canal stenosis or cord impingement (Exhibit 4F). A lumbar MRI revealed bulging discs with nerve root contact at L5-Sl and a small annular tear at L4-5 (Exhibit 5F). In February 2010, Dr. Kang noted normal cervical range of motion and slightly reduced lumbar flexion. There were tender points in the lumbar cervical paraspinals, and trapezius muscles. Straight leg raising was negative (Exhibit 8F). An MRI in May 2010 revealed lumbar spondylosis which was most severe at L5-Sl with some nerve compression. There was multilevel cervical degenerative disc disease with mild stenosis at C6-7 (Exhibit 6F). In May 2010, Dr. James Brennan, a neurosurgeon, reported that the claimant had 5/5 strength and intact sensation, although her gait was antalgic. Range of motion of the neck was acceptable (Exhibit 7F). In August 2010, Dr. Thomas Anderson, a neurosurgeon, reported normal neurologic exam, normal gait, normal muscle bulk tone, intact sensation coordination and 5/5 strength (Exhibit13F). In February 2012, straight leg

raising was negative. Strength was 5/5. Gait was normal. There were complaints of
pain with range of motion (Exhibit 23F). In October 2012, physical exam was normal
(Exhibit 26F). In January 2013, the lumbar spine was not tender to palpation. There
was normal range of motion of the spine, although straight leg raising was positive.
In April 2013, the lumbar spine was tender to palpation with normal range of motion.
Affect was appropriate (Exhibit 26F). Treatment notes from Dr. Congdon generally
noted normal physical exams with normal musculoskeletal and neurologic systems
aside from some lumbar and lumbar paraspinal tenderness (Exhibit 28F, 29F).

(Tr. 704-705).

Without further argument, Plaintiff simply states "the ALJ erred in his determination that she

had insurance to pay for her discogram or more advanced treatment merits remand." (ECF No. 12

at 28). The ALJ considered Plaintiff's testimony that she did not follow though on the discogram

or mental health because she did not have insurance. (Tr. 703). Later, the ALJ noted the record

showed inconsistent information as to when Plaintiff lost her insurance. The ALJ explained: "She

also testified that she stopped seeing Health Care Partners in 2014[4] due to a lack of insurance.

However, her orthopedic and mental health referrals were made before her last visit with Health Care

Partners, which indicates she actually had health insurance at that time." (Tr. 705). Even assuming

any error in such reasoning, the ALJ went on to make *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th

Cir. 1986) considerations that there was no evidence Plaintiff sought help through channels available

for indigent individuals such as charities. (Tr. 705).

As to Plaintiff's arguments regarding daily activities, this was but one of the many factors

as discussed by the ALJ as considered above. The ALJ did not solely rely on activities to find

---

[4] While it is noted 2014 is the year Plaintiff lost her insurance, a discogram was ordered
by Dr. Anderson in August 2010 and the ALJ noted this and that there was no documentation of
the discogram then. (Tr. 704). At the hearing, Plaintiff testified Plaintiff's husband pays for the
suboxone clinic. (Tr. 758). Plaintiff testified she had insurance up until 2014. (Tr. 759).

Plaintiff's subjective complaints of limitations inconsistent with the record. The ALJ stated: "The claimant has described activities, including driving, attending church, having custody of her granddaughters, and performing some household chores, which are not limited to the extent one would expect,[5] given her complaints of disabling symptoms and limitations." (Tr. 705). Daily activities are a factor to be considered and the ALJ appropriately did so. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). Under SSR 16-3p, at *7 and 20 C.F.R. § 404.1529(c) the ALJ also appropriately considered treatment Plaintiff received and Plaintiff's symptoms as discussed above.

Per 20 C.F.R. § 404.1529 and SSR16-3p, at the second step of the subjective symptom evaluation, the ALJ is to consider the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. The ALJ here performed such with reference to substantial evidence in the record. (Tr. 703-705).

Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. The ALJ sufficiently explained how Plaintiff's subjective allegations were not entirely consistent with the evidence. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms in accordance with the applicable CFR regulation and SSR guidance and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not entirely consistent with the record.

_____

[5] In October 2016, Plaintiff's provider noted that Plaintiff stated she did not have time to attend physical therapy and had too much going on in addition to not having insurance. (Tr. 984). Near in time in November 2016 and following, Plaintiff attended weekly counseling and suboxone appointments that her husband paid for. (Tr. 1088, 758).

**RFC**

Plaintiff argues the ALJ erred in determining the RFC. Specifically, Plaintiff argues the ALJ failed to explain the finding that Plaintiff had only *mild* difficulties in concentration, persistence, and pace. Secondly as to the RFC, Plaintiff argues the ALJ fails to explain how Plaintiff can perform light work where Plaintiff only missed meeting a Listing by one of the six elements of Listing 1.04.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In making that assessment, she must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7.

SSR 96-4p makes evident that the subjective symptom evaluation is to be performed before making the RFC determination because its findings are necessarily included in the RFC determination. Once the first step of the subjective symptom evaluation is surpassed, "allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p. In determining the RFC, Plaintiff's complaints are considered along with all of the other evidence of record, including objective exams. SSR 96-8p. Symptoms are less likely to reduce the RFC where an individual's statements about the limiting effects of symptoms are inconsistent with objective medical evidence and other evidence. SSR 16-3p.

Plaintiff argues the ALJ failed to explain the finding that Plaintiff had only *mild* difficulties

in concentration, persistence, and pace. The ALJ found:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a mild
> limitation. ...While the claimant reported difficulty with memory and concentration,
> she also admitted being able to drive, count change, and manage her bank account
> (Exhibit 3E). Dr. Jackson noted that the claimant could recall three past Presidents,
> name the seasons days of the week, perform simple math, and recall 5/5 objects
> immediately. Long-term and immediate memory were intact. Short term memory was
> partially intact, as the claimant could recall 2/5 objects after 15 minutes (Exhibit
> 14F). Treatment notes from the claimant's primary care providers do not document
> problems with attention and memory. The claimant also acknowledged driving to
> Columbia frequently to visit her grandchildren who were born prematurely (Exhibit
> 28F).

(Tr. 701). The ALJ cited to both objective and subjective evidence when analyzing the paragraph

B factor of concentration, persistence, and pace. (Tr. 701). The record supports the ALJ's summary.

(Tr. 322, 536-539, 984, 987, 993, 996, 999, 1006 ). Plaintiff points to some record citations of

medication side effects in pages batestamped in the 400s and 500s of the record transcript during

medication changes; the ALJ discussed medication and side effects in the RFC narrative: "Her

mental health treatment has mostly focused on the prescription of medications from her primary care

providers, which have been taken without significant side effects. Primary care treatment notes also

fail to document significant abnormalities in the psychiatric evaluation of her medical exams." (Tr.

704). The ALJ cited to Exhibits 9F, 17F, 24F, 26F, 28F, 29F as support. (Tr. 704). The ALJ's duty

is to consider the evidence and weigh it. The court does not reweigh to make such determinations.

The ALJ considered the record as to medication and side effects and supported such determination

with citation to more than a mere scintilla of evidence. As to Plaintiff's argument that the ALJ relied

too heavily on driving ability without considering qualifying statements, even assuming any error

in such, it would be harmless as the ALJ reviewed more evidence than driving ability and relied on

a multitude of considerations and evidence in assessing Plaintiff's mental RFC. Plaintiff also cites

to Dr. Neboschick's opinion, which will be discussed under the appropriate issue heading below. Plaintiff's reliance on *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) is misplaced as that case found that *moderate* difficulties are not accounted for by restricting the RFC to simple, routine tasks or unskilled work. Here, although not required per *Mascio*, the ALJ accounted for such *mild* difficulties in the RFC when limiting Plaintiff to only occasional decision making and changes in work setting. (Tr. 702). "The undersigned has considered her anxiety and depression in limiting her public contact with only decision making and changes in the work setting." (Tr. 707).

Substantial evidence supports the mental RFC espoused by the ALJ.

Plaintiff argues the ALJ fails to explain how Plaintiff can perform light work where Plaintiff missed meeting Listing 1.04 by only one of the six elements."Light work" is defined in 20 C.F.R. § 404.1567(b):

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

 20 C.F.R. § 404.1567(b). The ALJ found a physical RFC of: "light work as defined in 20 CFR 404.1567(b) and 416.967(b) with: no climbing ladders/ropes/scaffolds; occasional climbing ramps, stairs, stooping, crouching, and crawling; frequent reaching in all directions with the upper extremities; and, no exposure to unprotected heights, vibration, or extreme cold." (Tr. 702). After a narrative discussion including Plaintiff's subjective complaints, treatment history of degenerative disc disease, pain, and mental impairments, imaging and exams, activities, and weighing of opinions, the ALJ concluded:

In sum, the above residual functional capacity assessment is supported by the claimant's conservative treatment for her degenerative disc disease and anxiety/depression. While the undersigned does not find the claimant's subjective complaints of a limited ability to stand, sit, lift, concentrate and interact with others to be supported by the evidence of record, the undersigned has given the claimant the benefit of the doubt in limiting the amount she can sit, stand, walk, lift, carry, climb, stoop, crouch, and crawl, .... The undersigned has considered her reports that her neck problems have worsened and have caused difficulty using her arms in limiting her to no more than frequent reaching in all directions with her upper extremities. The undersigned has considered her complaints of pain, falls, and difficulty using her arms in limiting her exposure to heights and vibration. The undersigned has considered her report that her pain increases with exposure to cold in restricting her exposure to extreme cold. .... She has not required surgery for her back problems or formal mental health treatment. The majority of her care has been provided by her primary care physicians. Physical examinations generally revealed normal gait, motor strength, and sensation. The claimant has not required back surgery, chronic pain management, or the use of an assistive device for ambulation.

(Tr. 702-707).

Reviewing the ALJ's RFC narrative and cited exhibits in transcript pages 702-707,[6] despite having some evidence of some of the elements of Listing 1.04A, the ALJ cited to substantial evidence in formulating the RFC of a less than full range of light work. There is "more than a mere scintilla" of evidence that supports the ALJ's conclusion not to include further sitting, standing, or walking or any other additional limitations in Plaintiff's RFC. So long as there is substantial evidence in the record to support the ALJ's conclusion, it is not for this court to reweigh the

---

[6] The record supports that over 2013-2017, Plaintiff's primary treatment providers (Exs. 28F/29F as cited by the ALJ) note generally a plethora of only tenderness exams with no other abnormalities noted on exam. (Tr. 982, 988, 991, 994, 997, 1006, 1008, 1012, 1015, 1018, 1021, 1024, 1027, 1039, 1041, 1045, 1057, 1066, 1072, 1075, 1088, 1096, 1106, 1109, 1119, 1125, 1134, 1137, 1140, 533). Within exhibits 28F, 29F, and 7F, there are but two antalgic gaits when Plaintiff was seen generally monthly for years, which the ALJ considered. (Tr. 1031, 464;704-705). On multiple occasions over 2014, 2015, 2016, and 2017, it is noted that medication is effective, pain is better with medications, Plaintiff was stable on current medication, medications provided 50% relief, medications helped with activities of daily living, or Plaintiff was able to function socially. (Tr. 982, 1008, 1015, 1035, 1047, 1071, 1096, 1102, 1112, 1124, 1133, 1136).

17

evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

It is not the court's role to reweigh conflicting evidence or substitute its judgment for the ALJ's. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Based on the evidence in the record and the ALJ's discussion of the evidence, the ALJ's RFC finding is supported by substantial evidence and complies with the Social Security Rules. In sum, the ALJ did not err in explaining his findings with respect to the Plaintiff's RFC.

**Opinions**

Plaintiff argues the ALJ erred in weighing the opinions of Dr. Bettman and Dr. Muntean, using the same evidence addressed in the Listing 1.04 analysis by the ALJ and the ALJ's prior finding of moderate difficulties in social functioning. Plaintiff argues the ALJ erred in weighing Dr. Jackson's opinion by failing to consider Dr. Jackson's own objective findings. Plaintiff argues the ALJ erred in the weight given to Dr. Neboschick's opinion that Plaintiff was limited to slow paced situations and that she should be restricted from exposure to hazards.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c). The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y

18

negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A district court will not disturb an ALJ's determination as to the weight assigned to a medical opinion, including a treating physician's opinion, "absent some indication that the ALJ has dredged up 'specious inconsistencies' ... or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 Fd 559,563 (4th Cir. 2006). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

At the outset, the ALJ stated none of Plaintiff's treating physicians had made an opinion about functional limitations; the record supports this statement. (Tr. 705).

19

Dr. Bettman

On June 2, 2011, Dr. Bettman wrote a letter to Plaintiff's attorney. Plaintiff had been seeing Dr. Bettman since 2004. Plaintiff took Celexa and Klonopin for severe depression and Indocet for low back pain. Plaintiff had a limited education and a son with severe health issues. "I do not believe she is employable at this time." (Tr. 616). In a letter to Plaintiff's attorney in October 2013, Dr. Bettman made a similar statement: "In my opinion, and because of [Plaintiff's] limited education and significant psychiatric and back pain issues, I do not feel she is employable at this time." (Tr. 672).

The ALJ assigned no weight to Dr. Bettman:

> The undersigned accords no weight to the assessments of Dr. Elliott Bettman, a primary care provider, that the claimant is not capable of performing any work as it is not based on specific clinical findings, is conclusory in nature, and does not specify any functional limitations (Exhibits 22F and 25F). The assessment is also not supported by the objective evidence of record, including his own treatment notes which do not document any significant physical or mental abnormalities on exam. The treating physician's opinion is more a vocational opinion than a medical opinion and is not worthy of great weight. The undersigned also notes that although Dr. Bettman indicated that he had been treating the claimant at Health Care Partners since 2004, this is somewhat misleading as the treatment notes document that the claimant returned to Health Care Partners for medical care in 2010 after a 6-year absence (Exhibit 24F). Additionally, Dr. Bettman's assessments are devoid of any explanation, rationale, clinical findings or reference to objective testing.

(Tr. 705-706). Substantial evidence supports the ALJ's assessment of Dr. Bettman's opinions as statements were on an issue reserved to the Commissioner and not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (explaining that the issue of whether a claimant is disabled or unable to work is reserved to the Commissioner, and opinions by medical sources on that point are not entitled to special significance); *Plowden v. Colvin*, No. 1:12-CV-2588-DCN, 2014 WL 37217, at *16 (D.S.C. Jan. 6, 2014)("Opinions that a claimant is disabled or unable to work are reserved to the Commissioner and are not considered medical

opinions."). The ALJ went further here and also reviewed Dr. Bettman's treatment notes stating there were no significant abnormalities on Dr. Bettman's exam. Reviewing the record as to whether there were significant  abnormal exams, records show only some tenderness in her low back in November 2010, March 2011, January 2012, and April 2013, tearful in November 2010, and a positive straight leg raise in January 2013. (Tr. 650, 654, 657, 677, 679).

Substantial evidence supports the weight given to Dr. Bettman.

Dr. Muntean

In July 2010, Dr. Muntean completed a form stating Plaintiff was treated for depression and chronic back pain with medication and it was too soon to know if medication helped. Psychiatric care had not been recommended. (Tr. 685). Plaintiff had anxious mood/affect. Plaintiff had adequate attention/concentration. With "none" being the least and "very serious" being the most, the middle of five options, the answer of "obvious" was selected for type of work-related limitations in function due to mental condition. (Tr. 685, 516).

The ALJ assigned little weight to Dr. Muntean's opinion:

The undersigned gives little weight to the assessment of Dr. Muntean set forth in Exhibits 11F and 27F that the claimant's has obvious limitations in functioning due to her mental impairments. This assessment is not supported by Dr. Muntean's own treatment records (Exhibits 9F and 17F). Further, Dr. Muntean failed to state a basis for his conclusions and did not state the degree of the suggested limitations.

(Tr. 706).

The ALJ's statements regarding no specific functional limitation in the opinion is supported by the record. Further, reviewing Dr. Muntean's own records, the ALJ's statement that the records do not support the opinion is supported. In March 2010, Plaintiff had a panic attack and was told by the hospital to stop Seroquel. Plaintiff wanted to stop Cymbalta and change Xanax to Ativan too.

21

Exam appears to state "not tearful." (Tr. 499). A few days before this exam, Plaintiff examined as crying. (Tr. 500). Later in March and June 2010, Plaintiff had a normal mental exam; it was noted she had been discharged by Dr. Kang for a positive hydrocodone screen. (Tr. 495, 498). In June, July, October, November, and December 2009 and in July 2010, mental exams were normal. (Tr. 501-505, 567).

Substantial evidence cited by the ALJ supports the weight determined regarding Dr. Muntean's opinions.

Dr. Jackson

Plaintiff argues the ALJ erred in weighing Dr. Jackson's opinion by failing to consider Dr. Jackson's own objective findings.

On August 26, 2010, consultant Dr. Jackson, Ph.D. examined Plaintiff. (Tr. 536). Plaintiff reported depression and anxiety. (Tr. 536). Plaintiff drove herself and was on time. Plaintiff's walk was very slow. "Her psychomotor activity was slow. Her overall mood was depressed." Plaintiff reported daily crying spells, feelings of worthlessness/hopelessness/helplessness, fleeting suicidal thoughts, loss of interest in daily activity, social withdrawal, no appetite, and no interest in anything. Plaintiff reported panic attacks three to four times a week with fast breathing and pulse. (Tr. 536). Plaintiff reported difficulty sleeping and also wanting to sleep all the time. (Tr. 536). Plaintiff denied any prior treatment for mental disorder. (Tr. 537). Plaintiff reported she needed back surgery but was fearful of surgery and did not have the financial means to obtain surgery anyway. (Tr. 537). Plaintiff had attempted part time work for two weeks but could not manage due to back pain. (Tr. 537). Plaintiff's son does the chores. (Tr. 538). Plaintiff reported that she stays in bed all day long. (Tr. 538). Plaintiff sobbed openly throughout the entire evaluation. Plaintiff had appropriate eye

contact and cooperative attitude. Plaintiff's affect was congruent with her feelings of tearfulness and sadness. Her intelligence was average. Insight was poor. Long term memory was intact but short term was partially intact. (Tr. 538). Some medical records from 2010 were reviewed. (Tr. 539). "It appears that she has gone into a vegetative state secondary to depression." Plaintiff "does not have the ability to consistently function socially and to communicate with others without major problems arising due to her social withdrawal secondary to depression." Plaintiff "does not have the ability to consistently and independently persist at and to complete tasks in timely manner due to her vegetative state secondary to depression." (Tr. 539). Diagnosis were major depressive disorder single episodes, severe without psychotic features, panic disorder without agoraphobia, and personality disorder. (Tr. 540). GAF was 45. Prognosis was poor. Plaintiff needed "psychiatric treatment to consider antidepressant medication and medication for her panic disorder. Actually, if she had the financial means, she probably would need to go to an inpatient hospitalization to stabilize her on medications." (Tr. 540). Dr. Jackson ended by referring to Plaintiff as "most interesting and deserving." (Tr. 540).

The ALJ assigned little weight to Dr. Jackson's opinion:

While Dr. Jackson, a consultative psychological examiner, advised that the claimant would have significant limitations in performing activities of daily living, maintaining social functioning, and maintaining attention, concentration, or pace, the undersigned gives this opinion little weight as it is unsupported by the weight of the medical evidence of record (Exhibit 14F). The claimant's mental health treatment has been focused on the prescription of medications from her primary care provider. Although she alleged that she was referred to Waccamaw Mental Health for treatment, this is not corroborated in the treatment notes. The claimant's normal cognitive function noted during Dr. Jackson's exam as well as her reported daily activities, including her ability to drive, carry out some household chores, and attend church, are inconsistent with the level of severity reported by Dr. Jackson. Additionally, the undersigned notes that Dr. Jackson evaluated the claimant on only one occasion and did not have the benefit of a longitudinal treating relationship with

23

the claimant.

(Tr. 706). Plaintiff argues the ALJ failed to consider the objective findings of Dr. Jackson's opinion

to support his exam. (ECF No. 12 at 26).  This court is to consider the ALJ's opinion as whole.

*Craig*, 76 F.3d at 595. Earlier in the ALJ's opinion, the ALJ acknowledged and considered the "very

pronounced" exam findings of Dr. Jackson regarding limitations:

> Turning to the claimant's anxiety, although Dr. Jackson's mental status examination
> included very pronounced findings regarding limitations in the claimant's
> functioning, the claimant has not required inpatient hospitalization for this condition
> (Exhibit 14F). Her mental health treatment has mostly focused on the prescription of
> medications from her primary care providers, which have been taken without
> significant side effects. Primary care treatment notes also fail to document significant
> abnormalities in the psychiatric evaluation of her medical exams (Exhibits 9F, l 7F,
> 24F, 26F, 28F, 29F). While the claimant sought emergency room treatment in March
> 2010 for anxiety, the mental status exam revealed a normal mood and affect (Exhibit
> 5F). Although the claimant testified at a prior hearing that she was waiting for an
> appointment with Waccamaw Mental Health, there is no documentation that this has
> been scheduled. At the most recent hearing, the claimant reported that she did not
> follow through with a recommendation for mental health treatment due to a lack of
> insurance.
>
> Overall, this conservative course of treatment is inconsistent with a level of severity
> that would preclude the claimant from sustaining any work activity.

(Tr. 704). The ALJ cited to substantial evidence to support the weight given to Dr. Jackson and did

consider the severity of the exam findings by Jackson but compared and weighed such to numerous

other records.

Dr. Neboschick

Plaintiff argues the ALJ erred in the weight given to Dr. Neboschick's opinion that Plaintiff

was limited to slow paced situations and that she should be restricted from exposure to hazards.

In February 2011, non-examining state agency consultant Dr. Neboschick rendered an RFC.

(Tr. 604). There were some moderate limitations noted, but Plaintiff's argument is in regard to the

24

opinion "works best in situations that are slow paced." (Tr. 606). As to Plaintiff's argument that Plaintiff should be restricted from hazards; Dr. Neboschick opined the opposite that Plaintiff was able to recognize and appropriately respond to hazards. (Tr. 606).

The ALJ found:

Regarding the medical opinions of the DDS medical consultants, the undersigned accords them significant weight as their opinions are generally consistent with the other evidence of record. **However, the undersigned accords little weight to the finding of the Mental Residual Functional Capacity Assessment set forth in Exhibit 20F that the claimant would be limited to slow-paced situations, as this is not supported by the medical evidence of record**. The medical evidence also does not support a need to restrict the claimant from exposure to hazards as indicated in Exhibit 21F.

(Tr. 706)(emphasis added). As already discussed above, the court is to review the ALJ's opinion as a whole and the ALJ noted that the medical providers prescribing mental health medications did not document significant abnormalities on exam, citing to Exhibits 9F, 17F, 24F, 26F, 28F, 29F. (Tr. 704). Furthermore, none of Plaintiff's treatment records include a pace limitation and Plaintiff regularly examined with normal attention. (Tr. 467, 533, 538).  Plaintiff appears to speculate as to non-examining Dr. Neboschick's rationale as to the pace limitation that it is based on medication and lack of sleep, but no such reasoning is found in the opinion. (Tr. 605).

The ALJ's weight to Dr. Neboschick is supported by substantial evidence.

Conclusion as to Opinions Issue

The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision.  Even with some inapposite evidence, the ALJ provided more than a mere scintilla of record support for the weight given to the opinions contested by Plaintiff . It cannot be said  here that the ALJ has not given

good reason for the weight afforded to these particular opinions. *See* 20 CFR § 404.1527(d).  The ALJ's decision to give such opinions such weights was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).  The ALJ complied with SSR 96-2p(rescinded for applications after March 27, 2017)[7] in making clear to a subsequent reviewer the weight given and the reasons for that weight. Given the deferential standard of review, the court cannot say that the ALJ here did not provide citation to substantial evidence to support his findings on these opinions.  After a review of the ALJ's decision as discussed above and a review of the records relied on by the ALJ, the ALJ properly gave reasons for the weight given to these opinions.  The ALJ's findings are supported by substantial evidence and the ALJ conducted a proper analysis in accordance with the applicable law, regulations, and policies.

## III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390.  Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on

---

[7] The changes to the former 20 C.F.R. § 404.1527, which SSR 96-2p provided guidance on, are not effective to applications prior to March 27, 2017.

substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

<div style="margin-left: 50%;">s/ Thomas E. Rogers, III</div>

February 25, 2021                                 Thomas E. Rogers, III
Florence, South Carolina                    United States Magistrate Judge